1  **LAW OFFICE OF STEWART KATZ**
2  Stewart Katz, SBN 127425
   Guy Danilowitz, SBN 257733
3  555 University Avenue, Suite 270
   Sacramento, CA 95825
4  Telephone: (916) 444-5678
5  Facsimile: (916) 444-3364
   Attorneys for Plaintiff
6

7

8              **UNITED STATES DISTRICT COURT**
                **EASTERN DISTRICT OF CALIFORNIA**
9

10                                       NO. 2:10-CV-00826 JAM KJN
11 JAMES GARCIA,
12          Plaintiff,
13     vs.                               **PLAINTIFF'S STATEMENT OF**
                                         **UNDISPUTED FACTS IN SUPPORT OF**
14 CITY OF SACRAMENTO; City of           **MOTION FOR SUMMARY**
   Sacramento Chief of Police RICHARD    **ADJUDICATION**
15 BRAZIEL (Badge #5030); City of
16 Sacramento Police Officer GARY        **[Fed. R. Civ. P. 56]**
   DAHL (Badge #0672); and DOES I
17 through XX, inclusive,                **Date:** May 16, 2012
                                         **Time:** 9:30 a.m.
18          Defendants.                  **Courtroom:** 6
19 _____/
20
21       Pursuant to Local Rule 56-260 of the United States District Court for the Eastern
22 District of California, plaintiff James Garcia submits the following Statement of
23
   Undisputed Facts in Support of Motion for Summary Judgment.
24

| No. | Specific Material Fact | Evidence Establishing Fact |
|---|---|---|
| 1. | Shortly after 8:00 p.m. on April 10, 2009, California Highway Patrol (CHP) investigators driving an unmarked blue Chevy pick up truck observed a blue and silver Honda Civic with | Transcript of Deposition of CHP Investigator Schnabel (hereinafter "Schnabel DT") 11:18 – 12:2; 12:20 - 23 |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR
SUMMARY ADJUDICATION                                                          1

| | | |
|---|---|---|
| 1 | | illegal taillights. |
| 2 | 2. | The Civic, which was being driven by Manual Prasad, stopped on Grove Avenue in Sacramento after the officers turned on their red lights but then took off when both officers got out of their vehicle and were approaching Prasad to give him a citation. | Schnabel DT 13:5 – 8; Transcript of Deposition of CHP Investigator Shell (hereinafter "Shell DT") 10:17-24 |
| 3 | 3. | The officers got back in their truck and pursued Prasad in a chase lasting 3-4 minutes and ending at approximately 8:17 p.m. at approximately 431 Bowman Street in Sacramento near the intersection of Bowman and American, when and where Prasad crashed his car into a cinderblock wall, disabling the car, and fled on foot. | Schnabel DT 13:16-24; 13:25 – 49; 14:10 – 15:3; Map attached as Exhibit 1 to Declaration of Stewart Katz (hereinafter "Map") |
| 4 | 4. | Other CHP and Sacramento Police Department (SPD) Units were summoned, including an SPD helicopter, and a perimeter was set up. | Schnabel DT 15:3 - 6 |
| 5 | 5. | James Garcia was inside his house at 500 Potomac Avenue where he lived. | Transcript of Deposition of James Garcia (hereinafter "Garcia DT") 87:4 – 13 |
| 6 | 6. | James Garcia was not aware of the helicopter until he walked his brother-in-law out to the brother-in-law's car. | Garcia DT 87:4 – 13; 88:22-89:5 |
| 7 | 7. | After his brother-in-law left, Garcia encountered his friend Louis Robles and then went next door to socialize at 442 Potomac, the home of Priscilla Pruitt, the self-described "neighborhood mom" whose home had been a gathering place for Garcia and other neighborhood children for thirty years. | Garcia DT 90:5 – 15; Transcript of Deposition of Louis Robles (hereinafter "Robles DT") 27:11 – 21; Transcript of Deposition of Priscilla Pruitt (hereinafter "Priscilla Pruitt DT") 86:5-88:4 |
| 8 | 8. | As Garcia was walking into the backyard of 442 Potomac, Prasad ran behind Garcia and went up a tree in the backyard. | Garcia DT 92:11-93:15, 99:7 – 100:12; Video recording of the incident attached as Exhibit 2 to the Declaration of Stewart Katz (herinafter "Video"; Video recording of the incident with color |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION        2

| | | | |
|---|---|---|---|
| | | | overlay attached as Exhibit 3 to the Declaration of Stewart Katz (hereinafter "Color Video"); Transcript of Deposition of Defendant Gary Dahl (hereinafter "Dahl DT") 241:2 – 243:6 |
| | 9. | There were approximately six other people in the backyard at that time, all friends and acquaintances of Garcia and Robles, several of whom, including Robles, who were speaking with several CHP officers at a low fence separating 442 Potomac from a back neighbor. | Robles DT 38:9-39:18, Priscilla Pruitt DT 32:9 – 33:24; Garcia DT 95:13-96:19, Dahl DT 25:4-11; Color Video; Dahl DT 241:2 – 243:6 |
| | 10. | Approximately two minutes earlier, an SPD helicopter spotted an individual they believed to be the suspect and reported that he was on the roof (sic) of the house at 442 Potomac. | Dahl DT 24:9 – 12; Color Video; Dahl DT 241:2 – 243:6 |
| | 11. | Before Garcia was taken into custody, officers were aware that the suspect was Manual Prasad | Dispatch Records attached as Exhibit 10 to the Declaration of Stewart Katz |
| | 12. | The helicopter's spotlight lit up the back yard at 442 Potomac at the time the dog was deployed and Garcia was bit | Carbrera DT 18:20-22, Priscilla Pruitt DT 82:1-8, Frey DT 12:12-21; Color Video; Dahl DT 241:2 – 243:6 |
| | 13. | The helicopter called for a unit to take the person who was standing in the spotlight into custody. | Color Video; Dahl DT 241:2 – 243:6 |
| | 14. | Defendant Dahl, who heard the helicopter communication on his radio, responded to the location with his dog, named Bandit, and Officer Cabrera. | Dahl DT 62:8 – 19, 58:20-59:4; Color Video; Dahl DT 241:2 – 243:6 |
| | 15. | There is no evidence of canine warnings having been given in the dispatch (CAD) records. | Transcript of Deposition of Kenneth Wallentine (hereinafter "Wallentine DT") 54:25 – 55:3; Dispatch Records |
| | 16. | There is no evidence of canine warnings | Wallentine DT 54:20 – 24; |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION

3

| | | |
|---|---|---|
| | been given in the audio or video recordings of the incident. | Video; Color Video; Dahl DT 241:2 – 243:6. |
| 17. | The incident details report from the SPD's K-9 Activity Tracking System (KATS) indicated that there weren't any canine warnings given KATS is | Transcript of Deposition of Sergeant Steve Oliveira (hereinafter "Oliveira DT") 162:5-163:3; KATS Incident Report attached as Exhibit 4 to the Declaration of Stewart Katz |
| 18. | Officer Cabrera didn't give any canine warnings | Transcript of Deposition of Officer Rosalia Cabrera (hereinafter "Cabrera DT") 49:18-19 |
| 19. | Garcia didn't hear any canine warnings. | Garcia DT 89:6 – 12, 98:13 – 22 |
| 20. | William Pruitt did not hear any canine warnings. | Transcript of Deposition of William Pruitt (hereinafter "William Pruitt DT") 25:14 – 25; |
| 21. | Priscilla Pruitt did not hear any canine warnings. | Priscilla Pruitt DT 25:13-26:8, 37:7-9 |
| 22. | Louis Robles did not hear any canine warnings. | Robles DT 30:13-18, 43:4 – 11; |
| 23. | Dahl did not give any warnings anywhere on Potomac Avenue. | Dahl DT 64:25-65:4, 81:10-13, 81:23-82:12, 84:5-16 |
| 24. | The only warnings Dahl gave were at the beginning of his search at 517 Indiana. | Dahl DT 64:25-65:4, 81:10-13, 81:23-82:12, 84:5-16; Map |
| 25. | Dahl gave the warnings at the beginning of his search for the purpose getting his dog primed and excited for the search. | Dahl DT 64:25-65:4, 81:10-13, 81:23-82:12, 84:5-16 |
| 26. | Cabrera didn't hear any warnings while on Potomac Avenue. | Cabrera DT 20:15-18, 49:24-50:1, Cabrera DT 38:2-25 |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION

4

| | | |
|---|---|---|
| 27. | Sergeant Hinz does not recall hearing a canine warning that night and reported that none of the citizens reported hearing a warning either. | Transcript of Deposition of Sergeant Lisa Hinz (hereinafter "Hinz DT") 24:12-16, 72:10-11, 107:19-108:3 |
| 28. | CHP investigators did not recall hearing any canine announcement | Shell DT 33:13-34:12, Schnabel DT 18:7-9 |
| 29. | The helicopter crew did not recall making a canine announcement. | Transcript of Deposition of Officer David Smart (hereinafter "Smart DT") 24:11-23, 27:2-10; Transcript of Deposition of Officer Josh Frey (hereinafter "Frey DT") 24:10 - 22 |
| 30. | Dahl was not concerned with giving any canine warnings at 442 Potomac Avenue because he had made the determination that the suspect wasn't going to peacefully surrender and so warnings were pointless. | Dahl DT 120:15-121:8 |
| 31. | Cabrera claims she heard warnings from a helicopter when she was several blocks away and well before she was on Potomac Avenue. | Cabrera DT 42:19-44:12; Map |
| 32. | Dahl claims to have heard warnings from a helicopter but can't recall where he heard helicopter announcements, what they consisted of, or who gave the announcement, and stated that it was difficult to hear. | Dahl DT 63:5-24, 64:16-24, 121:9-16 |
| 33. | Dahl sent the dog into the backyard of 442 Potomac to bite the person identified by the helicopter. | Dahl DT 21:23 – 22:7, 24:9 – 16, 207: 14 – 15; Color video |
| 34. | Dahl knew the dog would bite the first person it found and that person was Garcia whom the dog bit at approximately 8:43 p.m. | Oliveira DT 124:1 – 5, 106:12-107:8, Olivera DT 108:11-13; Color video |
| 35. | Photographs of Garcia's leg after the bite are consistent with the injuries he suffered. | Dahl DT 32:22-24; Photographs attached as Exhibit 12 to the Declaration of Stewart Katz |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION

5

| | | |
|---|---|---|
| 36. | Dahl acknowledges that the dog "did exactly what I requested of him . . . . I sent him on a search, and he found and bit someone." | Dahl DT 21:23 – 22:7, 24:9 – 16, 207: 14 - 15 |
| 37. | In fact, after Garcia was bit, Prasad did peacefully surrender. | Dahl DT 128:17 – 25 |
| 38. | Police dogs used for searches by the City of Sacramento are trained to "find and bite" and are typically used off-leash as was the dog which bit Garcia in this case. | Dahl DT 60:1 – 4, 106:13-25; Oliveira DT 31:14 – 16; |
| 39. | The dogs are not trained to differentiate among people they are sent to bite, for example, suspect from non-suspect, old from young or man from woman. | Wallentine DT 41:3 – 42:10; Oliveira DT 31:14 – 16; Transcript of Deposition of Steve Brewer (hereinafter "Brewer DT") 24:6 – 8; Dahl DT 106:13 – 25 |
| 40. | If a dog is deployed out of view of an officer then there is no way for the subject to surrender to the dog and there will be a bite. | Hinz DT 62:23 – 63:4 |
| 41. | In this case Dahl could not see Garcia and his view into the back yard was limited by the fact that there was a four foot cyclone fence with slats and a gate that was partially open. | Dahl DT 52:19 – 53:2,. 53:17-54:9; 241:2 – 243:6; Carbrera DT 23:16-18; Color Video. |
| 42. | SPD dogs are trained to engage in hard, full mouth bites (which are qualitatively different from the bites which occur when a dog snaps out of territorial concerns) and also trained to lock on the target and maintain and, if necessary, re-acquire the bite until directed to release however long that might be. | Transcript of Deposition of Benjamin Hart (hereinafter "Hart DT") 103:19-105:17; Dahl DT 144:10- 21. |
| 43. | The Sacramento Police Department's policy regarding the use of canines in effect at the time of the incident was Sacramento Police Department, Office of Operations 510.08, Use of Canines, 11-20-03 | Olivera DT 88:22-89:8, Transcript of Deposition of Aaron Thompson (hereinafter "Thompson DT") 12:21; Canine Policy attached as Exhibit 11 to the Declaration of Stewart Katz; Transcript of Deposition of Lieutenant Dave Peletta in his capacity as |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION

6

| | | |
|---|---|---|
| | | the City of Sacramento's Person Most Knowledgeable with regard to the policies and practices regarding the deployment of Police Department canines (hereinafter "Peletta PMK DT") 38:4 – 10, 61:1 – 69:21 |
| 44. | The City of Sacramento Police Department written canine policy required that it was the responsibility of the canine handlers to provide a verbal warning prior to releasing a canine. | Canine Policy; Peletta PMK DT 38:4 – 10, 61:1 – 69:21 |
| 45. | The canine policy specified that the warning was to consist of a loud announcement stating: "This is the Sacramento Police Department K-9 Unit. Come out now and give yourself up, or we will send the dog to find you and you may be bitten." | Canine Policy; Peletta PMK DT 38:4 – 10, 61:1 – 69:21 |
| 46. | The canine policy required the canine handlers to repeat the warning after allowing for a reasonable period of compliance before releasing the dog. | Canine Policy; Peletta PMK DT 38:4 – 10, 61:1 – 69:21 |
| 47. | The canine policy required that canine handlers advise Communications after each warning was given | Canine Policy; Peletta PMK DT 38:4 – 10, 61:1 – 69:21; Wallentine DT 55:12-16, Thompson DT 33:23-25 |
| 48. | The canine policy required that if no response was received after again waiting for a reasonable period of compliance, the search may begin. | Canine Policy; Peletta PMK DT 38:4 – 10, 61:1 – 69:21 |
| 49. | The canine policy required that canine handlers notify Communications and perimeter officers that the search has begun. | Canine Policy; Peletta PMK DT 38:4 – 10, 61:1 – 69:21 |
| 50. | The canine required that canine handlers repeat additional warnings when making yard to yard searches | Canine Policy; Peletta PMK DT 38:4 – 10, 61:1 – 69:21 |

| | | |
|---|---|---|
| 51. | After Garcia was released from the hospital uniformed officers offered him cash to not take any further actions such as making a complaint or filing a tort claim. | Thompson DT 19:9-20:9; Dahl DT 167:3 - 19 |
| 52. | James Garcia was bitten by a dog owned by the City of Sacramento. | Dahl DT 50:12-17; Defendant City of Sacramento's Response to Plaintiff's Request for Admissions No. Two (hereinafter "City's Response to RFA No. 2"), Response No. 1 |
| 53. | Garcia was lawfully in a private place when he was bitten. | William Pruitt DT 24:9-14, 32:24-33:4 |
| 54. | It is also undisputed that Garcia was neither a party to, nor a participant in, nor suspected to be a party to or a participant in, the act or acts that prompted the use of the dog. | Thompson DT 11:24-12:7, 19:9-20:9; Olivera DT 162:5-163:3; Dahl DT 206:11-207:13 |
| 55. | Bandit, Defendant Gary Dahl's police dog on April 10, 2009 was a German Shepard weighing 82 – 84 lbs . | Dahl DT 60:18-20 |
| 56. | The use of a police dog is considered a use of force by the Sacramento Police Department. | Peletta DT 57:20-23. |
| 57. | In 15-20 different cases Bandit has inflicted even more severe tearing lacerations on bite victims than were sustained by Garcia. | Dahl DT 38:9-18 |
| 58. | Police dogs bite such as Bandit with greater force than civilian dogs and typically cause crushing injuries. | Wallentine DT 38:1-5; Transcript of Deposition of Peter Meade (hereinafter "Meade DT") 78:9-17, 104:24-106:7, 109:1-9 |
| 59. | Police dog bites almost always cause permanent injuries including scarring and/or disfigurement and present a high risk of deep puncture wounds that can sever or injure major blood vessels or arteries. | Meade DT 78:9-17, 104:24-106:7, 109:1-9 |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION

8

| | | |
|---|---|---|
| 60. | In this case, permitting and/or ordering the dog to bite Garcia created a substantial risk of causing great bodily injury. | Meade DT 67:20, 68:5-9 |
| 61. | In this case, permitting and/or ordering the dog to bite Garcia created a risk of serious infection. | Meade DT 67:20, 68:5-9 |
| 62. | The officers understood that the felony evasion had ended. | Cabrera DT 30:10-13 |
| 63. | There was no indication that the suspect was believed to be armed. | Dahl DT 85:7-14; Cabrera DT 30:14-16; Schnabel DT 35:15-20 |
| 64. | Dahl understood that while Prasad had been fleeing to avoid capture he had not engaged in any threatening acts towards anyone. | Dahl DT 8:5-14 |
| 65. | After Prasad crashed his car and fled on foot, a perimeter was set up and had been established prior to Garcia being bitten. | Dahl DT 142:4-14 |
| 66. | After a perimeter is established there is less fluidity to a situation. | Wallentine DT 111:1-5 |
| 67. | Dahl understood that Prasad was not suspected of a violent crime. | Dahl DT 87:7-10 |
| 68. | Prior to going into the yard of 442 Potomac, Officer Dahl had seen civilians all over the neighborhood in their yards and on the street and had direct contact with 3 or 4 people other than Mr. Pruitt whom he saw on the front porch of 442 Potomac. | Dahl DT 79:19-80:15 |
| 69. | Dahl believed the dog was going to bite the person in the backyard based on what he heard on the radio. | Dahl DT 61:3-8, 61:21-62:19 |
| 70. | At the time Garcia was bitten he was in the open, not concealed and standing or walking at an ordinary pace. | Wallentine DT 121:3-17; Color Video; Dahl DT 241:2 – 243:6 |
| 71. | Defendants' expert conceded that at the time the | Wallentine DT 121:19- |

| | | |
|---|---|---|
| | dog was deployed the conduct attributed to the person whom the dog was sent to bite constituted minimal resistance. | 122:21; Color Video; Dahl DT 241:2 – 243:6 |
| 72. | The purpose of using a dog is to help officers locate a suspect and the purpose of locating a suspect is to place them in custody. | Olivera DT 89:12-17 |
| 73. | The suspect had already been located before the dog was deployed. | Color Video; Dahl DT 241:2 – 243:6 |
| 74. | Even after a dog bites someone, an officer still needs to search them and take them into custody. | Peletta PMK DT 92:7-13 |
| 75. | Warnings have to be heard or reasonably capable of being heard to be meaningful. | Wallentine DT 64:6 – 12; Canine Policy; Peletta PMK DT 38:4 – 10, 61:1 – 69:21 |
| 76. | The video taken was from the helicopter using an infrared FLIR video camera. In that video, heat sources appear as light. | Transcript of Deposition of Michael Hutchins (hereinafter "Hutchins DT") 5:21 – 6:11, 12:5 – 13:8. |
| 77. | The color overlay video greatly eases the understanding of what is happening by putting different colors on Garcia, the suspect, the dog and Dahl | Color Video; Dahl DT 241:2 – 243:6 |

Dated: April 18, 2012                     LAW OFFICE OF STEWART KATZ

                                          /s/ Stewart Katz
                                          STEWART KATZ,
                                          Attorneys for Plaintiff