EILEEN M. TEICHERT, City Attorney (SBN 167027)
**SHERI M. CHAPMAN, Senior Deputy City Attorney (SBN 215775)**
SChapman@cityofsacramento.org
CITY OF SACRAMENTO
Mailing:  P.O. Box 1948, Sacramento, CA  95812-1948
Office:  915 I Street, 4th Floor, Sacramento, CA  95814
Telephone:  (916) 808-5346
Telecopier:  (916) 808-7455

Attorneys for Defendants CITY OF SACRAMENTO,
GARY DAHL and RICK BRAZIEL

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| JAMES GARCIA | Case No.:  2:10-CV-00826-JAM-KJN |
|---|---|
| Plaintiff, | **SEPARATE STATEMENT OF UNDISPUTED FACTS AND SUPPORTING EVIDENCE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE ADJUDICATION** |
| vs. | |
| CITY OF SACRAMENTO, RICK BRAZIEL and GARY DAHL | |
| Defendants. | |

Defendants submit the following Separate Statement of Undisputed Facts and Supporting Evidence in Support of Defendants' Motion for Summary Judgment or in the alternative Summary Adjudication.

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 1. On April 10, 2009, at about 8 p.m., CHP officers Cory Shell and Blake Schnabel tried to stop a vehicle for a traffic violation, but the vehicle took off at a high rate of speed through a residential area. | Ex. B, Depo. CHP Ofc. Cory Shell at 30:19-31:3 |
| 2. During the pursuit, the suspect ran stop signs and drove at unsafe speeds. | Ex. B, Depo. CHP Ofc. Cory Shell at 10:11-16, 13:4-19 |
| 3. The suspect violated numerous provisions of the California Vehicle Code and was subsequently convicted by a jury of felony vehicle evasion, a violation of California Vehicle Code §§2800.2 | Ex. B, Depo. CHP Ofc. Cory Shell at 31:9-12; Ex. S, jury verdict. |

| | |
|---|---|
| and 2800.4. | |
| 4. The CHP Officers involved in the vehicle pursuit have testified the fleeing suspect presented a danger to the public. | Ex. B, Depo. CHP Ofc. Cory Shell at 31:4-8; Ex. C, Depo. CHP Ofc. Blake Schnabel at 10:22-11:12, 28:16-19 |
| 5. The suspect crashed his vehicle into a brick or cinderblock wall and fled on foot. | Ex. B, Depo. CHP Ofc. Cory Shell at 13:25-14:8, 17:6-14 |
| 6. CHP Officer Cory Shell broadcast that the suspect was running from officers on foot. | Ex. B, Depo. CHP Ofc. Cory Shell at 14:24-15:15 |
| 7. The CHP officers did not know if the suspect was armed. | Ex. C, Depo. CHP Ofc. Blake Schnabel at 30:1-5 |
| 8. The suspect's identity was not known at the time of the vehicle pursuit or when he fled on foot from the scene of the crash. | Ex. B, Depo. CHP Ofc. Cory Shell at 31:13-22; Ex. C, Depo. CHP Ofc. Blake Schnabel at 33:15-35:7 |
| 9. CHP Officer Blake Schnabel chased the suspect on foot because he perceived the suspect continued to pose a risk to the public's safety. | Ex. C Depo. CHP Ofc. Blake Schnabel at 28:20-29:10 |
| 10. Units from many agencies arrived on scene. | Ex. B, Depo. CHP Ofc. Cory Shell at 15:16-16:4 |
| 11. CHP Officer Cory Shell broadcast the suspect was wearing blue jeans and a light colored shirt or jacket. | Ex. B, Depo. CHP Ofc. Cory Shell at 15:16-16:4, 18:1-5, 22:23-23:4 |
| 12. Additional descriptions of the suspect were broadcast indicating the suspect had a blue jacket, a white shirt, a black shirt and grey pants. | Ex.D, Depo. Sgt. Hinz at 77:22-84:25, 97:10-100:24 |
| 13. The last suspect description broadcast was that the suspect was a Hispanic male, wearing a light shirt and blue jeans. | Ex. D, Depo. Sgt. Hinz at 97:10-100:24 |
| 14. Citizens reported seeing the suspect run through their yards. | Ex. B, Depo. CHP Ofc. Cory Shell at 23:5-15, 37:10-22 |
| 15. A perimeter was set up, but it was a moving perimeter because the suspect kept moving. | Ex. B, Depo. CHP Ofc. Cory Shell at 15:16-16:4; Ex. G, Depo. Gary Dahl at 141:7-142:10. |
| 16. Officer Gary Dahl, a canine handler, sought and obtained approval from Sgt. Lisa Hinz, a patrol sergeant, to deploy his canine to apprehend the fleeing suspect. | Ex. D, Depo. Sgt. Hinz at 24:9-26:2; Ex. F, Decl. Ofc. Gary Dahl at ¶4. |
| 17. At the time of the incident, the City of Sacramento had a Use of Canine written policy that contained deployment guidelines, considerations prior to deployment, guidelines regarding canine announcements during building and/or area searches, reporting requirements for canine deployments that result in a reportable | Ex. E, Depo. Lt. Peletta as PMK at 6:3-8, Ex. 12. |

SEPARATE STATEMENT OF UNDISPUTED FACTS & SUPPORTING EVIDENCE IN SUPPORT OF MSJ/MSA

238442

| | |
|---|---|
| use of force, and procedures for review of canine deployments that result in a use of force. | |
| 18. Factors that Officer DAHL considered before deploying the canine included: (1) the suspect had lead CHP on a high speed pursuit through a residential area in violation of Cal. Vehicle Code § 2800.2 (a felony); (2) the suspect was actively resisting arrest by running from officers over fences in violation of Cal. Penal Code §148; (3) the suspect had not been patted down for weapons; (4) the suspect posed a threat to the community by jumping fences into backyards and attempting to access sheds; and (5) the suspect posed a threat to officers by concealing himself in an area where weapons could be found. | Ex. F, Decl. Ofc. Gary Dahl at ¶3, Ex. 1. |
| 19. Sgt. Hinz approved the use of the police canine because the suspect was wanted for felony evasion, a violation of California Vehicle Code §2800.2, he was pursued by the CHP and fled in a vehicle, he was actively resisting by running from the police and jumping fences, he had not been searched, and he was actively trying to escape. | Ex.D, Depo. Sgt. Hinz at 26:3-19 |
| 20. Sgt. Hinz perceived it created a safety risk when the suspect ran through backyards in a residential neighborhood. | Ex. D, Depo. Sgt. Hinz at 26:3-19 |
| 21. The suspect had tried to access a shed. | Ex.D, Depo. Sgt. Hinz at 26:3-19. |
| 22. Sgt. Hinz was concerned that if the suspect accessed a shed and acquired a weapon, it would create a public safety risk and it would increase the likelihood that officers could get hurt. | Ex.D, Depo. Sgt. Hinz at 26:3-19, 99:25-101:4 |
| 23. Sgt. Hinz approved deployment of the canine before it was deployed. | Ex. D, Depo. Sgt. Hinz at 28:1-29:23 |
| 24. Sgt. Hinz testified that they didn't know where the suspect was hiding the backyard, so deploying the canine was prudent for officer safety. | Ex. D, Depo. Sgt. Hinz at 111:16-114:24 |
| 25. During the search and prior to the deployment of the canine, James Garcia left his residence at 500 Potomac Avenue, and visited with a friend in the driveway of 442 Potomac Avenue. | Ex. H, Depo. James Garcia at 7:11-17, 90:5-91:5 |
| 26. At the time Mr. Garcia left his residence, it was dark outside. | Ex. H, Depo. James Garcia at 88:3-7 |
| 27. When Mr. Garcia left his residence, he saw a police canine vehicle near the front yard. | Ex. H, Depo. James Garcia at 96:18-23, 97:5-98:12 |
| 28. Mr. Garcia was wearing a grey sweater and blue jeans, he was 5-5 and weighed 180 pounds at the time of the incident. | Ex. H, Depo. James Garcia at 133:10-134: |

| # | Fact | Evidence |
|---|---|---|
| 29. | Mr. Garcia testified he has had contact with law enforcement throughout his life, and the first thing the police do when a person runs is let their dog loose. | Ex. H, Depo. James Garcia at 123:19-124:3 |
| 30. | Mr. Garcia's friend went into the backyard to talk with a canine unit who had an incident with a neighbor's dog; officers said they were looking for someone. | Ex. H, Depo. James Garcia at 94:18-96:11 |
| 31. | As Mr. Garcia was standing in the driveway at 442 Potomac Avenue, a man ran by him and into the backyard of the residence. | Ex. H, Depo. James Garcia at 91:6-10, 99:16-100:15 |
| 32. | The gate the man ran through to get to the backyard of 442 Potomac Avenue stands about 4 feet high. | Ex. B, Depo. James Garcia at 104:21-105:7 |
| 33. | Mr. Garcia followed the man into the backyard, and stood within five to ten feet of the tree where the suspect was hiding. | Ex. H, Depo. James Garcia at 105:8-25, 111:15-25, 112:6-17 |
| 34. | Seconds passed between the time Mr. Garcia's friend went into the backyard and the man went up the tree. | Ex. B, Depo. James Garcia at 110:13-24 |
| 35. | Mr. Garcia stood and pointed up to the tree where the suspect was hiding. | Ex. B, Depo. James Garcia at 108:21-24 |
| 36. | A Sacramento Police helicopter flown by Officer David Smart, with a back-up (temporary) Tactical Flight Officer "TFO," assisted in the search. | Ex. I, Depo. Ofc. David Smart at 5:7-10, 15:20-21, 8:17-20; Ex. J, Depo. Ofc. Joshua Frey at 9:10-23, 12:3-5. |
| 37. | Among the duties of the TFO is to identify heat sources, and to advise police canine handlers during a search if there are persons other than the suspect outside, in the perimeter. | Ex. F, Decl. Ofc. Gary Dahl at ¶5; Ex. I, Depo. Ofc. David Smart (pilot) at 36:16-37:5; Ex. K, Depo. Sgt. Michael Hutchins at 32:7-23; Ex. L, Depo. Lt. Peletta at 76:16-19; Ex. O, Depo. Sgt. Oliveira at 134:12-136:18. |
| 38. | The TFO told officers the suspect was on the roof of 442 Potomac Avenue, had jumped off, and was running into the backyard of the residence. | Ex. F, Decl. Ofc. Gary Dahl at ¶¶ 3, 5, Ex. 1. |
| 39. | The TFO was not aware of the other individuals in the backyard, and did not tell officers there were others in the backyard. | Ex. F, Decl. Ofc. Gary Dahl at ¶5; Ex. J, Depo. Ofc. Joshua Frey at 26:5-8. |
| 40. | Officer Dahl and his canine partner headed toward 442 Potomac Avenue, where they encountered an elderly resident on the front porch, on their way to the backyard. | Ex. F, Decl. Ofc. Gary Dahl at ¶5. |

SEPARATE STATEMENT OF UNDISPUTED FACTS & SUPPORTING EVIDENCE IN SUPPORT OF MSJ/MSA

238442

| | |
|---|---|
| 41. The resident at 442 Potomac Avenue observed the suspect jump over his neighbor's fence, jump over his gate into his front yard, jump over a fence to get out of his front yard, and run into his backyard. | Ex. M, Depo. William Pruitt at 26:1-18. |
| 42. The resident did not tell Officer Dahl that there was anyone in his backyard. | Ex. F, Decl. Ofc. Gary Dahl at ¶5 |
| 43. Officer Dahl observed a large part of the backyard as he approached the fence to the backyard; the backyard was large and deep, with a large structure on it. | Ex. F, Decl. Ofc. Gary Dahl at ¶¶3, 5, Ex. 1. |
| 44. Officer Dahl did not see or hear anyone in the backyard prior to his deployment of the canine; he also did not know where the suspect was hiding. | Ex. F, Decl. Ofc. Gary Dahl at ¶¶3, 5, Ex. 1. |
| 45. Officer Dahl deployed his canine into the backyard to apprehend the fleeing felony suspect. | Ex. F, Decl. Ofc. Gary Dahl at ¶¶3, 5, Ex. 1 |
| 46. Officer Dahl did not know that there was anyone in the backyard of 442 Potomac Avenue, other than the suspect, when he deployed the canine. | Ex. F, Decl.Ofc. Gary Dahl at ¶5; Ex. G, Depo. Gary Dahl at 93:21-94:1. |
| 47. Officer Dahl would not have deployed the canine into the backyard of 442 Potomac Avenue if he had known that there were others in the backyard in addition to the suspect. | Ex. G, Depo. Ofc. Gary Dahl at 171:21-173:16. |
| 48. The police canine first made contact with James Garcia's left calf, he felt a "nub," and thought it was a chicken pecking his leg, so he brushed it off. | Ex. H, Depo. James Garcia at 112:18-23 |
| 49. This maneuver, in addition to raising his arm or hand, could be interpreted by a police canine as an act of aggression. | Ex. F, Decl. Ofc. Gary Dahl at ¶11 |
| 50. Officer Dahl did not see the canine's initial apprehension of Mr. Garcia. | Ex. F, Decl. Ofc. Gary Dahl at ¶8; Ex. G, Depo. Ofc. Gary Dahl at ¶52:9-53:10 |
| 51. Officer Dahl also did not see Mr. Garcia prior to the canine's apprehension of him. | Ex. G, Depo. Ofc. Gary Dahl at ¶52:9-53:10. |
| 52. When Officer Dahl observed the canine apprehending Mr. Garcia, he thought Mr. Garcia was the suspect. | Ex. F, Decl. Ofc. Gary Dahl at ¶3,8, Ex. 1. |
| 53. When Officer Dahl realized Mr. Garcia was not the subject, Officer Dahl called the canine off and kept a hold of the canine to redirect him to the suspect hiding in the tree. | Ex. F, Decl. Ofc. Gary Dahl at 9; Ex. G, Depo. Ofc. Gary Dahl at 126:20-127:7, 128:4-16, 165:10-16. |

SEPARATE STATEMENT OF UNDISPUTED FACTS & SUPPORTING EVIDENCE IN SUPPORT OF MSJ/MSA

238442

| # | Fact | Evidence |
|---|------|----------|
| 54. | Officer Dahl did not observe the canine reacquire or re-bite Mr. Garcia after he was called off and redirected to the subject in the tree. | Ex. F, Decl. Ofc. Gary Dahl at ¶10; Ex. G, Depo. Ofc. Gary Dahl at 164:10-16, 165:2-4. |
| 55. | Warnings pertaining to the use of a police canine were given prior to the deployment of the canine. | Ex. G, Depo. Ofc. Gary Dahl at 84:8-16; Ex. I, Depo. Ofc. David Smart (pilot) at 26:21-27:4; 28:25-29:2; Ex. N, Depo. Ofc. Rosalia Cabrera at 42:19-23, 43:14-19. |
| 56. | Officer Dahl gave a canine announcement on Indiana Avenue, which was the last place the suspect was seen. | Ex. G, Depo. Ofc. Gary Dahl at 84:8-16. |
| 57. | Officer Dahl did not give additional canine announcements because he understood that the helicopter had made the announcements for him. | Ex. G, Depo. Ofc. Gary Dahl at 62:20; Ex. F, Decl. Ofc. Gary Dahl at ¶6. |
| 58. | Officer Dahl did not make an announcement immediately prior to deploying the canine because he did not know where the suspect was hiding in the backyard and he did not want to reveal his location out of concern it would provide the suspect with a tactical advantage, and may subject an officer or a canine to an ambush. | Ex. F, Decl. Ofc. Gary Dahl at ¶6; Ex. L, Depo. Lt. Peletta at 89:25-92:13; Ex. P, Depo. Aaron Thompson (senior canine handler) at 28:9-12, 32:10-33:7. |
| 59. | Either the Tactical Flight Officer or the pilot of the helicopter made canine announcements from the helicopter. | Ex. I, Depo. Ofc. David Smart (pilot) at 26:21-27:4, 28:25-29:2 |
| 60. | Sgt. Hinz understood that the helicopter gave a canine announcement for Officer Dahl. | Ex. D, Depo. Sgt. Hinz at 101:5-103:16 |
| 61. | While the foot pursuit was going on, CHP Officer Cory Shell heard the Sacramento Police Department helicopter give numerous warnings over the loud speaker to the effect that they were the police and telling people to stay indoors. | Ex. B, Depo. CHP Ofc. Cory Shell at 33:13-34:12. |
| 62. | Officer Cabrera, working as a cover officer for Officer Dahl, heard canine announcements from the helicopter at the east side of Northgate Avenue, while setting up the perimeter. | Ex. N, Depo. Ofc. Rosalia Cabrera at 42:19-23, 43:14-19. |
| 63. | Officer Cabrera also heard the helicopter telling dispatch they made the canine announcement and she heard another officer confirm the announcement was heard on the ground. | Ex. N, Depo. Ofc. Rosalia Cabrera at 49:2-14. |
| 64. | CHP Officer Blake Schnabel testified that in his experience, Sacramento Police Department helicopters frequently give announcements, including telling people to stay indoors, lock | Ex. C, Depo. CHP Ofc. Blake Schnabel at 30:16-31:3 |

| # | Fact | Evidence |
|---|------|----------|
| | their doors, and not come out. | |
| 65. | Officer Dahl did not know that citizens on the ground were (allegedly) unable to hear the air unit's canine announcements. | Ex. F, Decl. Ofc. Gary Dahl at ¶7. |
| 66. | Officer Joshua Frey, a relief Tactical Flight Observer testified it was the practice where there was a perimeter and a canine is being deployed to give canine announcements unless there's a situation where the suspect poses such a great risk that for officer safety, an announcement is not given. | Ex. J, Depo. Ofc. Joshua Frey at 24:12-19. |
| 67. | Officer Joshua Frey also testified that it is the practice for canine officers to tell the air unit to make announcements for them because the air unit is a better facilitator for the announcements with a large public address system and the ability to make announcements for wide, large areas. | Ex. J, Depo. Ofc. Joshua Frey at 25:2-7, 25: 16-25 |
| 68. | Additionally, Officer Joshua Frey gives announcements without prompting if he sees people outside, within the perimeter, who should not be there or pose a safety risk. | Ex. J, Depo. Ofc. Joshua Frey at 25:6-15. |
| 69. | Officer David Smart, an experienced law enforcement officer and police helicopter pilot, has testified the practice with canine searches is to make numerous canine announcements for the public and the suspect. | Ex. I, Depo. Ofc. David Smart at 5:8-24, 27:2-7. |
| 70. | Officer David Smart also testified the practice is to give canine announcements when they deploy canines unless the canine handlers specifically tell them not to, which is rare. | Ex.I, Depo. Ofc. David Smart at 29:3-13, 40:25-41:11. |
| 71. | Officer David Smart further testified the type of announcement generally made is "Attention on the ground, the Sacramento Police Department or California Highway Patrol or sheriff or whoever is doing it, will be using a police dog to conduct a search of the area. Please go inside your houses and remain there until the search is completed so you don't get accidently bit by the dog. Suspect, if you can hear my voice, come out now. Surrender, you will not be injured. If you do not surrender, the police dog will be used to search for you. If they find you, it may bite you and you may be injured. That is sort of a general announcement." | Ex. I, Depo. Ofc. David Smart at 28:1-16. |
| 72. | Similarly, Officer David Smart has testified that he has heard the helicopter's public address system while he was on the ground and it was loud and audible. | Ex. I, Depo. Ofc. David Smart at 26:5-17. |
| 73. | Officer David Smart also testified that he tries to speak slow and not too fast when making an announcement from the helicopter so that he can be heard on the ground. | Ex. I, Depo. Ofc. David Smart at 34:12-15 |

| | |
|---|---|
| 74. If ground units cannot hear announcements from the helicopter, they have been trained to get on the air and tell the helicopter staff. | Ex. I, Depo. Ofc. David Smart at 34:17-20. |
| 75. Lt. Dave Peletta, who oversees the canine unit, testified the verbal announcements provision in the City's then existing use of force policy was the City's policy pertaining to verbal warnings of canine deployments, and it was followed with the exception of notifying dispatch each time an announcement was made. | Ex. L, Depo. Lt. Peletta at 7:3-2538:4-39:10. |
| 76. The City's Use of Canine policy in effect at the time of the incident provided that with the concurrence of the on duty supervisor, no warning may be given if it will increase the risk of injury or escape. | Ex. L, Depo. Lt. Peletta at 64:19-66:11, 69:22-72:6; Ex. O, Sgt. Oliveira at 118:3-120:13; Ex. R, Depo. Aaron Thompson (senior canine handler) at 31:2-24 |
| 77. In addition, there is an exception for a rapidly evolving situation, where there is no time to consult with a supervisor, in which case no warning may be given if it would increase the risk of injury or escape. | Ex. L, Depo. Lt. Peletta at 72:7-74:15; Ex. P, Depo. Sgt. Oliveira at 94:10-96:6; Ex. D, Depo. Sgt. Hinz at 28:1-29:23. |
| 78. The policy of the Sacramento Police Department was to give canine announcements and to wait a reasonable time for compliance. | Ex. L, Depo. Lt. Peletta at 64:19-66:11, 69:4-21. |
| 79. Sgt. Oliveira, the canine sergeant and a police canine handler, testified that the canine unit's practices were consistent with the written canine policy at the time of the incident. | Ex. O, Depo. Sgt. Oliveira at 20:6-23:25, 91:20-93:15, 94:10-96:6, 116:5-24. |
| 80. Following the incident involving Mr. Garcia, Officer Dahl had several discussions with Sgt. Oliveira about the deployment, and it was discussed during the canine unit's weekly maintenance training. | Ex. G, Depo. Ofc. Gary Dahl at 20:25-22:7, 129:4-16, 130:6-21. |
| 81. Sgt. Oliveira spoke with his supervisor, Lt. Peletta about the incident involving Mr. Garcia and he drafted a memorandum reviewing the apprehension. | Ex. O, Depo. Sgt. Oliveira at |
| 82. Officer Dahl also discussed the incident on-scene with Sgt. Lisa Hinz. | Ex. G, Depo. Ofc. Gary Dahl at 129:4-16. |
| 83. Sgt. Hinz prepared a use of force report for this incident and sent it up her chain of command, however, she is unable to locate a copy of the report. | Ex. D, Depo. Sgt. Hinz at 46:9-49:7, 56:19-61:8 |
| 84. Sgt. Hinz notified her Lieutenant of the use of force, the canine bite, the night of the incident. | Ex. D, Depo. Sgt. Hinz at 46:9-49:7 |
| 85. Sgt. Oliveira has testified it is his practice to look at each canine bite to ascertain if it was within policy. | Ex. O, Depo. Sgt. Oliveira at 51:13-55:20; 56:12-58:14 |

| | |
|---|---|
| 86.  If a police canine bites a non-suspect, Sgt. Oliveira generates a separate memorandum analyzing the deployment. | Ex. O, Depo. Sgt. Oliveira at 72:4-74:10. |
| 87.  If a canine is deployed correctly but it bit the wrong person, it is still considered to be within department policy. | Ex. O, Depo. Sgt. Oliveira at 76:15-79:2. 21:13-23:25 |
| 88.  Sgt. Oliveira looks at the police report while conducting his review and usually discusses the apprehensions with the handlers too. | Ex. O, Depo. Sgt. Oliveira at 64:12-66:15 |
| 89.  When a Lieutenant questioned whether deployment on a suspect who commits a traffic violation and then commits felony vehicle evasion was lawful, Sgt. Oliveira sought legal advice and learned it was lawful. | Ex. O, Depo. Sgt. Oliveira at 141:17-143:20, Ex. 37. |
| 90.  In the last five years, no officers were injured by a suspect when a canine was deployed. | Ex. O, Depo. Sgt. Oliveira at 143:25-145:4. |
| 91.  Whenever a police canine bites someone, a use of force report is generated by the patrol sergeant, which is reviewed by the patrol lieutenant, the watch commander, the special operations lieutenant and the Metro captain. | Ex. L, Depo. Lt. Peletta at 13:4-15:14. |
| 93.  The information reviewed with the use of force report generally includes the crime or incident report, the CAD Call report and any remarks that are generated by the communications center. | Ex. L, Depo. Lt. Peletta at 25:22-27:6. |
| 94.  The sector sergeant is responsible for submitting the use of force forms and for performing an on-scene investigation of the use of force. | Ex. L, Depo. Lt. Peletta at 77:20-78:21. |
| 95.  Officer Dahl has been partnered with his canine for more than four and one-half years. | Ex. G, Depo. Gary Dahl at 44:20-23. |
| 96. During Officer Dahl's tenure as a police canine handler, he has seen in excess of 100 canine bites. | Ex. G, Depo. Ofc. Gary Dahl at 34:4-20. |
| 97.  Between the time period of January 1, 2008 and April 10, 2009, Officer Dahl had approximately 448 canine deployments. | Ex. F, Decl. Officer Gary Dahl at ¶12. |
| 98.  Between January 1, 2008 and April 10, 2009, Officer Dahl had less than five bites by Bandit on people who were either not the suspect, were not perceived to be the suspect, or who were not hiding where the suspect was believed to be located and refused to come out, despite canine announcements. | Ex. F, Decl. Ofc.Gary Dahl at ¶12; Ex. S, Decl. Chapman. |

| # | Fact | Evidence |
|---|---|---|
| 99. | Obedience and control is important to Sacramento Police Canine handlers because they primarily work off-lead (leash). | Ex. G, Depo. Ofc. Gary Dahl at 147:1-4. |
| 100. | Basic training for Sacramento Police canine handlers involves approximately three months of training with a police canine trainer. | Ex. Q, Depo. Steve Brewer at 29:11-19 |
| 101. | Sacramento police canine handlers and canines also attend sixteen hours of maintenance training per month, which is consistent with the guidelines promulgated by the California Peace Officer Standards Training Commission. | Ex. Q, Depo. Steve Brewer at 29:20-30:3 |
| 102. | Since 2006, Steve Brewer has been the canine trainer for the Sacramento Police Department. | Ex. Q, Depo. Steve Brewer at 23:17-21. |
| 103. | The Sacramento Police Department canine trainer has 27 years of experience as a law enforcement officer, 13 years experience as a canine handler, and more than ten years experience as a police canine trainer. | Ex. Q, Depo. Steve Brewer at 8:2-9, 8:12-17, 32:9-17. |
| 104. | Sacramento Police Department canines comply with the voluntary POST guidelines. | Ex. Q, Depo. Steve Brewer at 12:17-19 |
| 105. | The Sacramento Police Canine Trainer concentrates on control of canines, including call-offs; it is part of the weekly maintenance training. | Ex. Q, Depo. Steve Brewer at 30:8-18, 48:6-9. |
| 106. | Sacramento Police Canines, as part of their basic training, must be able to perform call-offs at 100 yards. | Ex. Q, Depo. Steve Brewer at 40:16-18. |
| 107. | Steve Brewer, the Sacramento Police Canine Trainer has not seen an ordinate amount of accidental bites for any canine handler which would be a red flag indicating his/her deployments were not proper. | Ex. Q, Depo. Steve Brewer at 55:25-56:10; Ex. P, Depo. Sgt. Oliveira at 79:16-82:13. |
| 108. | Steve Brewer also has not observed that Sacramento Police canine handlers are too quick too deploy. | Ex. Q, Depo. Steve Brewer at 53:17-24. |
| 109. | Steve Brewer has opined that the Sacramento Police canine handlers appear to know the general orders and the law and are informed about when it is appropriate to deploy a canine. | Ex. Q, Depo. Steve Brewer at 53:17-24. |
| 110. | Sgt. Oliveira participates in the weekly maintenance training and helps develop scenarios or topics to train on. | Ex. O, Depo. Sgt. Oliveira at 30:1-25. |
| 111. | If there is a problem with an apprehension or if there is an issue which requires additional training, it is discussed with the trainer at the weekly meeting. | Ex. O, Depo. Sgt. Oliveira at 79:16-82:13. |

238442

DATED:  April 13, 2012

EILEEN M. TEICHERT,
City Attorney

By: /s/ Sheri M. Chapman
**SHERI M. CHAPMAN**
Senior Deputy City Attorney

Attorneys for Defendants
CITY OF SACRAMENTO, GARY DAHL,
And RICK BRAZIEL